OLIVE M. KENISTON *v.* GEORGE H. KENISTON AND J. HIDDEN.

[IN CHANCERY.]

*Husband and Wife, Contract Between. Evidence. Gift.*

1. Courts of equity require clear and incontrovertible evidence to establish a gift from husband to wife.
2. The master stated in his report that he failed to find, that, by any such arrangement, as was alleged in the bill, or by any arrangement, the oratrix became the sole owner of the goods in question; *Held,* to mean *any* arrangement, express or implied.
3. The bill was dismissed without costs.

BILL to restrain a husband from interfering with his wife's separate estate. Heard on bill, answer, traverse, and master's report, February Term, 1883. REDFIELD, Chancellor, by a strictly *pro forma* decree, ordered the bill dismissed.

The bill alleged, that the oratrix was married to the defendant Geo. H. Keniston, June 4, 1873, that she was still his wife, and brought the bill by her next friend; that in May, 1879, said Geo. H. was carrying on business as a general merchant, and had become largely involved in debt; that at this time he had a stock of goods on hand worth about $2,000 in cash, which he assigned to Adam White and Royal Lyon to secure them as sureties on a bank note given by said Geo. H. for the sum of $1,500; that said White and Lyon took possession of said goods and the store of said Geo. H., under said assignment, and put the oratrix into the store as their agent to sell the goods; that she proceeded to sell the goods and apply the proceeds in payment of the bank note, and that on or before January 1, 1880, she had fully paid the same; that there then

remained remnants, from $500 to $700 worth of the goods, which the said White and Lyon afterwards turned over to said Geo. H.; that the oratrix was to have $4 per week for her services, to be paid out of the goods; that she had never been paid, and that when the goods were turned back as aforesaid, it was understood and agreed by the parties that the suit due her was in the remainder of the stock so returned. The bill also alleged that subsequent to the return of the goods, "on or about March, A. D. 1880, it was agreed between your oratrix and said Geo. H. that your oratrix should have said residue of said stock, and use of said store hereinafter mentioned, and that she should go on with said business in her own right, and have the same as her own separate property, managing the business and paying all debts which she might contract in and about the same;" that the oratrix relying on this agreement carried on the business in her own right until the present time in accordance with the agreement; that on or about the 23d of November, 1881, the said Geo. H., being extremely hostile to the oratrix, took possession of the store and stock of goods, and claimed to own them; that the said store and homestead of said Geo. H. were encumbered by a mortgage for all or nearly all they were worth; that the oratrix with the approval of said Gro. H., entered into an arrangement with the mortgagee, defendant Hidden, by which she was to pay the mortgagee, and that the mortgagee was to assign to her such part of the mortgage debt and mortgage as she should pay; and that she paid several hundred dollars. The prayer was that the oratrix be protected in her interest in the mortgage debt so paid by her, and that the said Geo. H. be enjoined from interfering with the said goods.

The answer denied that the oratrix was doing business in her own right; denied the arrangements alleged to have been entered into "on or about March, A. D. 1880;" and that the oratrix had any interest whatever in the goods.

The master found in part: That the defendant Keniston and the oratrix were husband and wife; that Keniston in May, 1879, owned a homestead, outbuildings and a store, heavily mortgaged to the defendant Hidden; that at this time Keniston, being involved, and selling general merchandise, assigned his stock of goods to the said White and Lyon to secure them as sureties for him on a debt he owed the bank; that they took possession of the goods and store, and "for the purpose of saving expense in converting said goods into money * * * to pay said bank

debt, the said White and Lyon, with the consent of defendant Keniston, entered into an agreement with said oratrix whereby she was to run said store for them for $4 per week; but nothing was said as to how or by whom she was to be paid; that thereupon the oratrix entered into the service of said White and Lyon under said agreement, and ran for them said store until the 31st day of December, A. D. 1879,—32 weeks and three days—when the bank debt, which said assignment had been made to secure, having been paid, except a small balance of a few dollars subsequently paid, viz: Jan. 7, 1880, the said White and Lyon ceased to exercise any control over the management of said store, and the oratrix notified the firms with whom she had been dealing in the name of White and Lyon, that the firm of White and Lyon had been succeeded by herself; but this was without the knowledge of defendant Keniston, who was then in Maine or New Hampshire; and from that time until the 23d day of November, A. D. 1881, ordered goods in her own name, kept the books, contracted and paid debts, and ran the store without objection on the part of said defendant Keniston; that during this time all the goods she bought were ordered in her own name.

The master further found, that at the time of said assignment to said White and Lyon, said house, store, barn, shed, and land were subject to a mortgage amounting on the 10th day of January, A. D. 1880, to $2,862, owned by said defendant Hidden, all of which was then due and that said Hidden was threatening to foreclose the same; that on the 19th day of January, 1880, said oratrix without the knowledge of defendant Keniston, entered into an agreement in writing with said defendant Hidden, wherein said Hidden agreed to forbear foreclosing said mortgage and give and deliver to said oratrix one of said mortgage notes for the sum of $200, which it was then talked was about the amount of extra interest which had been paid Hidden on the mortgage debt before that time, if the said oratrix would at that date pay him, the said Hidden, the sum of $162, and would also pay him the further sums of $250 on or before the 10th day of January of each of the years 1881, 1882 and 1883, and the sum of $1,750 on or before the 10th day of January, 1884, with interest annually, with the further verbal condition that said oratrix was to run and keep said store open during the time covered by said payments; that the said Hidden further agreed, in said writing, that he would give said oratrix receipts for all sums paid by her towards said mortgage, and that when

the amount of said mortgage was paid, he would assign to her said mortgage and note or such part of said mortgage and note as such oratrix should pay ; that said oratrix then and there accepted said agreement in writting, and paid said sum of $162 and verbally agreed to run said store and keep it open during the time covered by said payments, and the said Hidden then and there gave up and delivered to said oratrix said note for $200, which she now holds, and which on the 10th day of January, 1883, amounted to the sum of $238.16.

The master further finds, that, from July 28, 1879, until September 7, 1879, and from October 30, 1879, until on or about March 20, 1880, the defendant Keniston was away in Maine and New Hampshire, selling pills and patent medicines, and that he had no knowledge when said bank debt was paid, or of the manner in which the oratrix was conducting the business in said store, or of the agreement with said Hidden as to said mortgage, until his return home on or about March 20, 1880, when at the request of the oratrix he was informed by said White, who was present when said agreement between said Hidden and the oratrix was made, executed and delivered, that said bank debt was paid, and of the agreement betwen said oratrix and said Hidden, and that defendant Keniston, upon receiving this information, expressed himself well pleased at what the oratrix had done in those matters.

The master further finds, that said defendant Keniston remained at home at this time from on or about said March 20, 1880, until June 24, 1880, taking no part in the management of said store, selling no goods, and in no way asssisting in keeping the books that were used in connection with said store business, but doing more or less of the freighting necessary to be done in said busines during that time.

The master further finds, that although said White and Lyon ceased to have any management and control of said store and the business carried on therein after December 31, 1879, they did not reassign said goods to anyone until May 21, 1880, at which time the master finds they reassigned the goods then in the store to said defendant Keniston, and at the same time took from said defendant and the said oratrix a receipt in full for rent of store and services of said oratrix, and also at the same time the said White took from said defendant a note for the sum of $175, it being the amount still remaining unpaid of $200 borrowed of said White by the said oratrix with which to pay the said Hidden the said sum of $162, upon said mortgage

indebtedness; which said note of $175 to the said White the said oratrix afterwards paid out of the avails of said store business.

The master further finds, that all said defendant has ever received from said White and Lyon for the rent of said store, or for the services of said oratrix, was the reassignment of said goods, and that said oratrix has never received anything for her services. * * *

The master further finds, that in the year 1881, in the presence of the said oratrix, the defendant made out his inventory of taxable property and included therein his real estate and the goods in said store, and offset the debts contracted in said store business, as well as his own undisputed debts, including the Hidden mortgage indebtedness, and that the oratrix made out no inventory of taxable property during that or any other year in her own name, but thereafterwards paid from the avails of said store business the taxes assessed upon the list made out upon said defendant's said inventory.

*    *    *    *    The master further finds, that on the 23d day of November, 1881, said defendant Keniston took possession of said store and stock of goods, and continued to hold the same, and prevent the said oratrix from in any way having anything to do with the same until the bringing of this bill to enjoin said defendant.

The oratrix at the hearing claimed title to the goods by virtue of an agreement made with White and Lyon at the time of said assignment of said goods that said oratrix was to have the balance of said goods remaining after paying said bank indebtedness for her said services, and that said defendant assented to such agreement, and abandoned all claim to any interest and property in said goods so assigned.

The defendant requested the master to report that the oratrix testified at said hearing that she claimed no interest, title, or property in said stock of goods except by said agreement with said White and Lyon made at the time of said assignment, and he accordingly reported that said oratrix did so testify upon cross examination, but when her attention was again called to that point upon re-examination, he found that she testified that she acquired an interest to said goods by virtue of said agreement with said White and Lyon and also by the agreement with defendant claimed to have been made about March 20, 1880.

The master failed to find that any such agreement, or any

Keniston *v.* Keniston and Hidden.

agreement as to said services different from the one herein before found, was then made, or that anything was then said as to how said oratrix was to receive her pay, or that said defendant then and there abandoned any claim to any interest and property in or to said goods.

The oratrix further claimed title to said goods at the hearing as well in her bill as by her evidence, by virtue of an arrangement between said defendant Keniston and herself made on the day of said defendant's return home on or about March 20, 1880, wherein oratrix claimed it was agreed between them that said oratrix should have said residue of said stock and use of said store, and that she should go on with said business in her own right, and have the same as her own separate property, managing the business and paying all debts which she might contract in and about the same, and at all times saving the said defendant Keniston from all expenses or liability in and about the same.

The master failed to find that any such arrangement was made as claimed by said oratrix, or that any arrangement was made at that or any other time whereby said oratrix was to have said goods as her sole and separate estate.

The master also found that the oratrix paid several hundred dollars on the Hidden mortgage, and that she held the mortgagee's receipts for the same. The other facts are sufficiently stated in the opinion of the court.

*L. H. Thompson*, for the oratrix.

This suit is brought by the oratrix against her husband, defendant Keniston, and defendant Hidden, to determine and protect her rights and equities in and to the stock of goods, and in the mortgage held by Hidden. The contract with Hidden was exclusively for the benefit of the oratrix; and the husband expressed himself as " well pleased " with it. While the master failed to find a *special* arrangement, a *special* agreement between the husband and wife as to the goods, the report taken as a whole shows that the husband consented that she might have and use the residue returned by White and Lyon. The defendant acquiesced in the conduct of his wife. No other inference can be drawn from the facts reported only that both parties understood that the wife was the sole owner of the goods

returned after paying the bank debt, and also what she paid on the mortgage. The courts protect the rights of the wife, and recognize an understanding between her and her husband as to her separate property. *Child v. Pearl*, 43 Vt. 229; *Delano v. Blanchard*, 52 Vt. 585; *Willard v. Dow*, 54 Vt. 191; *Ashworth v. Outram*, 5 Ch. D. 923; s. c. Eng. R. 550, 557. It was simply one way of making a reasonable provision for his wife; if reasonable, it will be sustained. 2 Story Eq. (6 ed.) s. 1375; *Lucas v. Lucas*, 1 Atk. 270; Tyler Inf. & Cov. s. 361. It is a presumption of law that what goods, &c., he furnished her under the circumstances was an advancement. *Bent v. Bent*, 44 Vt. 559; *Whitten v. Whitten*, 3 Cush. 191; 2 Story Eq. (6 ed.) s. 1204; *Bennett v. Camp*, 54 Vt. 37. When the husband permits his wife to take and have her own personal earnings, or personal property belonging to him, to use, to hold, or dispose of, for her own benefit under an understanding, either *express* or *implied* between them that she is to have, and may have the same as her own separate property, or where the husband acquiesces in the wife's taking and using such property as and for her own separate estate, equity will treat the same as her separate estate, as between herself and husband.

*Pinney v. Fellows*, 15 Vt. 535; *Porter v. Bank*, 19 Vt. 417; *Cardell v. Ryder*, 35 Vt. 47; *Frary v. Booth*, 37 Vt. 78, 89; *Child v. Pearl*, 43 Vt. 228; *Spooner v. Reynolds*, 50 Vt. 444; *Barron v. Barron*, 24 Vt. 375; *Slanning v. Style*, 3 P. Wms. 337; *Phelps v. Phelps*, 20 Pick. 556; *Fisk v. Cushman*, 6 Cush. 20; *Sweeney v. Bank*, 116 Mass. 384; *Lovell v. Newton*, 4 C. P. Div. 7; s. c. 30 Eng. R. 369; *Howard v. Bank*, 40 Vt. 601; Schoul. Dom. Rel. 285 n. 2; 2 Story Eq. (6 ed.) s. 1386; Schoul. Husb. & Wife, ss. 296, 302, 385, 402; 1 Parsons Con. (5 ed.) 366; *Peterson & Wife v. Mulford*, 36 N. J. L. 485. See *Premo v. Hewitt*, 55 Vt. 365.

*J. C. Burke*, and *Crane & Alfred*, for defendant Keniston.

The master finds that there was no such arrangement as alleged in the bill. To establish the fact of a gift of a chattel

Keniston *v.* Keniston and Hidden.

from husband to wife there must be clear and distinct evidence corroborative of the wife's testimony. 1 Lead. Cas. Eq. 382, 395. The whole transaction must be established by evidence beyond suspicion : *M'Leon* v. *Longlands,* 5 Ves. 79 ; the evidence must be incontrovertible : *Jennings* v. *Davis,* 31 Conn. 134, 138 ; 2 Story Eq. ss. 137. 1381 ; there must be a clear and manifest intention of the owner to give : *Cutting* v. *Gilman,* 41 N. H. 151 ; a change of possession is necessary : *Little* v. *Willetts,* 25 Barb. 125 ; *Brewer* v. *Harvey,* 72 N. C. 176 ; also, delivery : *Moore* v. *Moore,* 10 Eng. Rep. 800 ; *Wheeler* v. *Wheeler,* 43 Conn. 188 ; *Carpenter* v. *Dodge,* 20 Vt. 595.

The opinion of the court was delivered by

ROWELL, J. The bill goes upon the ground of an express agreement between White and Lyon, the oratrix, and her husband, that she should be paid out of the goods for her services in selling the same for White and Lyon, and of a subsequent express agreement between her and her husband, made on or about March 20, 1880, to the effect that she was to have as her sole and separate property what remained of said goods after the bank debt was paid, and to carry on the business in her own name and right, saving her husband from all expense in relation thereto, and of an express assent by him to her buying in and holding the Hidden mortgage pursuant to her agreement with Hidden.

To show title to the goods before the master, the oratrix claimed an agreement with White and Lyon, made at the time her husband assigned the goods to them, whereby she was to have as compensation for her services in selling the same what remained of said goods after the bank note was paid, and that her husband assented to said agreement, and abandoned all claim to any interest or property in the goods thus assigned.

The master fails to find that any such agreement as to her services was then made, or that anything was then said as to how the oratrix was to be paid for her services, or that her husband then abandoned any interest or property in said goods.

The oratrix further claimed before the master that she acquired title to said goods by virtue of the agreement with her husband of about March 20, 1880, set up in the bill. But the master says he fails to find that any such arrangement was made, or that any arrangement was made at that or any other time whereby the oratrix was to have said goods as her sole and separate estate. By this we think the master means that he fails to find *any* arrangement, express or implied. This construction of the report is conclusive against the oratrix.

But it is contended in her behalf that the master means only to say that he fails to find any *express* agreement, and that the report shows that Keniston in effect consented that his wife might take said goods as her own property and carry on the business in her own name and for her own benefit and that she had a right so to understand the matter from about the 20th of said March. But if she had a right so to understand, it is nowhere found that she did so understand, nor how otherwise she understood the matter. It is not found what the understanding between her and her husband was in this behalf, nor whether there was any understanding between them.

While courts of equity give full effect as between the parties to gifts by husband to wife, they require clear and incontrovertible evidence to establish such gifts as a matter of intention and fact. 2 Story Eq. s. 1375 ; Schoul. Husb. & Wife, s. 385. But here the master has found neither a gift nor an intention to give. Nor was the case tried before him on the theory of an implied gift or transfer to the wife, but on the ground of an express agreement and understanding. There are no facts found of sufficient legal significancy to warrant us in saying that the oratrix has in any way become the owner of this property. It is true that many facts are reported that tend strongly to support her claim of an implied gift or other transfer, but they are largely countervailed by other facts—such, for instance, as the reassignment of the goods to Keniston by White and Lyon on May 21, 1880, and the inventorying of them by Keniston in 1881, in the presence of his wife, as his own for the purposes of taxation, and

Keniston *v.* Keniston and Hidden.

offsetting the store debts, as well as debts that were undisputedly his, and also the Hidden mortgage. All this was evidence from which the master might have found what the understanding and expectation of the parties were, and whether or not they regarded the goods as the property of the oratrix ; but there is no finding upon the subject.

The result is we hold that there are not sufficient findings to warrant a decree in favor of the oratrix ; but we think she ought not to be made to pay costs, and as the decree is strictly *pro-forma*, the case will be remanded with directions that the decree be so far modified as to dismiss the bill without costs.

Ordered accordingly.